**Michael MEZO, Plaintiff-Appellee,**

v.

**INTERNATIONAL UNION, UNITED STEELWORKERS OF AMERICA, Defendant-Appellant.**

No. 76–1981.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 15, 1977.

Decided July 6, 1977.

David L. Gore, Chicago, Ill., Michael H. Gottesman, Washington, D. C., for defendant-appellant.

Miriam D. Balanoff, Mark Bigelow, Chicago, Ill., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, and PELL and TONE, Circuit Judges.

TONE, Circuit Judge.

This case raises the question of whether *Hall v. Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973), should be interpreted to permit the allowance of an attorney's fee for prelitigation services in connection with a claim later asserted in a suit under § 102 of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 412, when the District Court found that it was necessary for the plaintiff to retain counsel but not to file suit in order to vindicate a protected right. We reverse the District Court's order allowing fees.

Plaintiff Mezo, a member of the Steelworkers Union, published an article criticizing expenditures of local union funds in a union newspaper. The president of the local union responded by filing charges against Mezo under the local's bylaws, asserting that Mezo had committed "a breach of trust and willingly, deliberately and knowingly made the false and libelous statements that appeared under his name in" the article. Pursuant to the bylaws a local union trial committee held a hearing on the charges.[1]

After the committee's hearing and before it had made findings or recommendations, the district director of the international union wrote to the international's general counsel about the charges against Mezo. The general counsel advised the director by telephone that "there would be no harm coming to Mr. Mezo by reason of these charges," but apparently the word was not relayed to Mezo, because he proceeded to retain an attorney, Miriam Balanoff. She discussed the matter with the general counsel and with an administrator, who by then the international had appointed to take charge of the affairs of the local. In the course of these conversations, she was advised that the meeting at which the charges were to be presented had been cancelled and that the charges would not be prosecuted further. She nevertheless proceeded to file this action, alleging in the complaint that the international and the local had violated §§ 101 and 609 of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 411 and 529. Although plaintiff moved for a preliminary injunction, no hearing was ever held on the motion and no injunction was ever issued. No report was made by the local union trial committee, and the charges were withdrawn three months after the action was filed.

Subsequently, the District Court, determining that the case was moot except for the attorney's fee issue, heard evidence relating to the necessity for retaining an attorney and bringing the action. Finding "that it was unnecessary for plaintiff to commence this action after plaintiff's counsel was given assurances that no action would be taken against the plaintiff but

---

1. Under the union constitution, this committee is appointed to hear charges and make non-binding recommendations of its findings to the local union membership at a membership meeting, following which the membership votes on the findings. Either the charging party or the accused party has a right to appeal from the membership to the International Executive Board. The Board appoints a panel of board members or staff representatives who are non-members of the local union to hear the case de novo and make a written recommendation to the Board, which then acts on the recommendation.

that it was necessary for plaintiff to retain the services of an attorney to vindicate his right of free speech," the court allowed an attorney's fee based upon the time spent by Attorney Balanoff "in representing plaintiff prior to the filing of the instant complaint." Only the international union appeals.[2]

In *Hall v. Cole, supra,* a claim of violation of § 102 similar to Mezo's was prosecuted to a judgment favorable to the plaintiff which included an award of attorney's fees. The Supreme Court sustained the award on the common benefit theory of *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 393–394, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), and held that Congress had not prohibited such relief.[3] That theory applies when "the plaintiff's successful litigation confers 'a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them.'" *Hall v. Cole, supra,* 412 U.S. at 5, 93 S.Ct. at 1946, quoting from *Mills v. Electric Auto-Lite Co., supra,* 396 U.S. at 393–394, 90 S.Ct. 616. The Court said in *Hall* that, "by vindicating his own right, the successful litigant dispels the 'chill' cast upon the rights of others." Moreover,

"such lawsuits [can] contribute to the preservation of union democracy," and thus have a beneficial effect on the union's future operation. The award of attorney's fees "simply shifts the costs of litigation" to the union members, who would have had to pay the fees if they had brought the suit. *Hall v. Cole, supra,* 412 U.S. at 8–9, 93 S.Ct. 1943, 1948.

The union here does not question the continuing authority of *Hall,* but argues that *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 257–258, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), sounds "a cautionary note against an unduly expansive reading of *Hall.*"[4] It also argues, without elaboration, that "no action was taken against appellee which affected all members of the union," which we take to mean that merely entertaining the charges was not enough to constitute an infringement of Mezo's protected right of free speech.

■ Our conclusion that an attorney's fee is not allowable does not rest on the latter ground, on which we do not pass.[5] Rather, we reverse because, as also urged by the union, we must accept as not clearly erroneous the District Court's finding that it was not necessary to file this action in

---

**2.** Presumably the judgment can be satisfied by execution against the property of the local union, which has not appealed. The possibility of execution against the international, however, prevents the appeal from being moot.

**3.** Another recognized basis for awarding attorney's fees in the absence of authorization by contract or statute, bad faith (see 412 U.S. at 5, 93 S.Ct. 1943), is concededly not available in the case at bar.

**4.** In *Alyeska* the Court stated the common benefit rule exemplified by *Mills* and *Hall* more narrowly than it is stated in those cases. Referring to *Trustees v. Greenough,* 105 U.S. 527, 26 L.Ed. 1157 (1882), the Court spoke of

"the historic power of equity to permit the trustee of a fund or property, or a party preserving or recovering a fund for the benefit of others in addition to himself, to recover his costs, including his attorneys' fees, from the fund or property itself or directly from the other parties enjoying the benefit."

421 U.S. at 257, 95 S.Ct. at 1621 (footnote omitted). Especially when the cases cited as showing "that rule" to have been "consistently

followed" included *Mills* and *Hall,* we cannot read this statement as narrowing the common benefit theory to cases in which "a fund or property" is involved. Certainly if the Supreme Court had intended to so limit the rule and exclude intangible benefits of the kind involved in *Hall* and *Mills,* it would have said so more directly. Nevertheless, *Alyeska* cannot be viewed as encouraging expansion of the common benefit rule of *Hall v. Cole.*

**5.** Therefore we do not decide whether Mezo acted prematurely in filing suit without first exhausting his internal union remedies. Compare *Wiglesworth v. Teamsters Local 592,* 552 F.2d 1027 (4th Cir. 1976), *cert. denied,* —— U.S. ——, 97 S.Ct. 2676, 53 L.Ed.2d 271 (1977), with *Kerr v. Screen Extras Guild, Inc.,* 466 F.2d 1267, 1269–1270 (9th Cir. 1972), *cert. denied,* 412 U.S. 918, 93 S.Ct. 2730, 37 L.Ed.2d 144 (1973). In *Hall v. Cole,* 412 U.S. 1, 3, 93 S.Ct. 1943, 1945, 36 L.Ed.2d 702 (1973), the Court explicitly noted that plaintiff brought his § 102 suit "[a]fter exhausting his intra-union remedies . . . ."

order to vindicate Mezo's right. *Hall* repeatedly refers to the existence of litigation as the basis for the exercise of the court's equitable power to award fees. *Hall v. Cole, supra,* 412 U.S. at 5, 7, 9, 13–14, 93 S.Ct. 1943. It would be an unwarranted extension of *Hall* to use the existence of litigation which was not necessary to obtain vindication of the protected right as a vehicle for the allowance of an attorney's fee. If the litigation had not been filed, there would have been no arguable basis for an award of fees by a court of equity. The filing of unnecessary litigation can hardly supply the missing authority.

As plaintiff reminds us, attorneys' fees may be allowed even though a successful result was achieved by the plaintiff without prosecuting the litigation to a final judgment, *Kerr v. Screen Extras Guild, Inc.,* 466 F.2d 1267 (9th Cir. 1972), *cert. denied,* 412 U.S. 918, 93 S.Ct. 2730, 37 L.Ed.2d 144 (1973); *Yablonski v. United Mine Workers of America,* 151 U.S.App. D.C. 253, 466 F.2d 424, 431 (1972), *cert. denied,* 412 U.S. 918, 93 S.Ct. 2729, 37 L.Ed.2d 144 (1973), and may include compensation for time spent in exhausting administrative remedies and other prelitigation services necessary or beneficial to the litigation, *Usery v. Local Union No. 639, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Ind.,* 177 U.S.App.D.C. 222, 543 F.2d 369, 384–385 (D.C.Cir.1976), *cert. denied,* 429 U.S. 1123, 97 S.Ct. 1159, 51 L.Ed.2d 573 (1977). Fees may not be allowed, however, when it was unnecessary to file the litigation at all. The judgment against the International Union is therefore reversed.

Reversed.